# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 18-CR-00242-01 |
| | * | |
| VERSUS | * | JUDGE ZAINEY |
| | * | |
| MAX RAY BUTLER | * | MAGISTRATE JUDGE KAY |

### UNITED STATES' RESPONSE IN OPPOSITION TO
### DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The defendant, Max Ray Butler, an inmate currently incarcerated at Victorville Federal Correctional Institute, seeks compassionate release based on concerns arising from the COVID-19 pandemic. For the reasons set forth below, this Court should deny the motion.

### RELEVANT BACKGROUND

On September 13, 2018, the grand jury returned an indictment against Max Ray Butler and others charging him with numerous crimes related to a debit card number theft scheme and prison contraband importation scheme. [Doc. 1.] This scheme involved Butler's use of a contraband cellphone, while in custody at Oakdale Federal Correctional Institute, to obtain stolen debit card numbers and facilitate illicit wirings to other inmates, who then wired the money on to various third parties at Butler's request. On June 19, 2019, Butler pleaded guilty to one

count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and on September 9, 2019, this Court sentenced Butler to a term of imprisonment of 27 months imprisonment. [Docs. 142, 176.]

On July 10, 2020, Butler filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. [Doc. 205.] In his motion, Butler urges that he is prescribed a nasal spray,[1] fluticasone propionate, for a deviated septum. Butler argues that the nasal spray, the generic version of Flonase, is classified as a corticosteroid, and that, per the CDC, corticosteroids may weaken one's immune system, putting one at greater risk of COVID-19 complications. [See Doc. 205, at 2-3.] Per this district's standing procedural order regarding compassionate release motions, the public defender's office reviewed the motion, and declined to enroll on Butler's behalf. This Court set a deadline of July 28, 2020, for the United States' response to his motion.

## LAW AND ARGUMENT

***1.  The defendant's stated health conditions are insufficient to allow for compassionate release.***

"[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010) (cleaned up). Consistent with that principle of finality, 18 U.S.C. § 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," except

---

[1] Although Butler describes the medication only as an inhaler, BOP medical records clarify he has been prescribed a nasal spray for his septum issues, with instructions to spray once in each nostril daily. *See* Sealed Exhibit 1.

in three circumstances: (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), such as that presented by the defendant; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

Relevant here, under § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling circumstances," consistent with guideline policy statements. Under the statute as amended by the First Step Act, the Court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*. In this case, Butler urges that he first wrote the warden regarding compassionate release on May 17, 2020. The first letter BOP has, however, urging compassionate release was received by the warden on June 25, 2020. Based on the undersigned's most recent communications with BOP, it has yet to adjudicate this request. Still, this Court has jurisdiction because thirty days have lapsed since the warden's receipt of Butler's request.

Nonetheless, the defendant's motion fails on the merits. This is because Butler's stated concern, involving his use of a corticosteroid nasal spray, does not constitute an "extraordinary and compelling reason" under the compassionate release

statute. Section 3582(c)(1)(A) provides that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Here, the applicable policy statement, U.S.S.G. § 1B1.13, provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (1) suffering from a serious physical or medical condition, (2) suffering from a serious functional or cognitive impairment, or (3) experiencing deteriorating physical or mental health because of the aging process, any of which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility, and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets forth other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that

BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

With regard to the last consideration relating to "extraordinary and compelling reasons" identified by the Director, BOP has issued a regulation defining its own consideration of compassionate release requests. *See* BOP Program Statement 5050.50. 2  This program statement was amended effective January 17, 2019, following the First Step Act's passage.  It sets forth in detail BOP's definition of the circumstances that may support a request for compassionate release, limited to the same bases the Sentencing Commission identified: serious medical condition, advanced age, and family circumstances.

Regarding his stated medical conditions, the defendant asserts that compassionate release is appropriate because he is currently using a steroid-based nasal spray for a deviated septum. Butler does not allege that his septum condition, standing alone, causes him unique COVID-related concerns, but instead alleges that his regular usage of the nasal spray puts him at a heightened risk of serious complications relating to COVID because, as a corticosteroid, it has the potential to affect his immune system. [Doc. 205, at 2.]

The defendant's use of fluticasone propionate nasal spray, however, is not an "extraordinary or compelling" reason to justify compassionate release under § 3582(1)(A) and the binding policy statement. As stated, this medication is the

---

2 Available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

generic equivalent of Flonase,[3] an over-the-counter medication taken by millions of Americans, which, to date, has not been a public point of concern regarding COVID-related risks. To this end, Butler overstates the CDC's current guidance regarding corticosteroid usage: in connection with COVID-19, the CDC has made no finding that the use of corticosteroids likely heightens one's risk of serious COVID-19 complications, much less that use of an over-the-counter varietal is likely to cause these negative effects. Instead, the CDC has stated only that individuals who actually have "an immunocompromised state [arising] from . . . use of corticosteroids" "might" have an elevated risk of COVID-19 complications.[4] This is in contrast to the CDC's guidance on the risk associated with other medical conditions, such as cancer or diabetes, where the CDC has concluded that individuals with these conditions generally *do* have a higher risk of serious COVID complications. *See id*.

Again, Butler has alleged only that he takes a corticosteroid, and has offered no indication that his use of the fluticasone propionate nasal spray has actually resulted in him having a weakened immune system. Accordingly, Butler has failed so

---

[3] *See* Flonase label filed with Federal Food and Drug Administration, at https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/020121s044lbl.pdf. (indicating the same active ingredient (i.e., fluticasone propionate) , in the same dosage, as Butler's generic nasal spray). This labeling contains similar language to what Butler cites as appearing on his medication, regarding how, as a class of drugs, corticosteroids may affect immune system response in some individuals. The labeling goes on to explain, however, that there is no information regarding how dosage, route of administration, the co-existence of underlying conditions, or individuals' past use of other steroids contributes to this finding.

[4] *See* CDC Website, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#cancer.

show a serious medical condition qualifying as "extraordinary or compelling reason" for compassionate release under the binding U.S.S.G. policy statement.

Both before and since the COVID-19 outbreak, courts have denied compassionate release motions involving defendants with far more serious medical conditions than the defendant, who, again, has not shown any actual immune suppressive disorder related to his use of the nasal spray, the active ingredient of which is in a commonly used over-the-counter medication. *See e.g., United States v. Watson*, 2020 WL 1890541 (N.D. Okla. Apr. 16, 2020) (post-COVID-19, denying compassionate release because the defendant's sickle-cell anemia did not substantially diminish his ability to care for himself in prison); *United States v. Feiling*, 2020 WL 1821457, at *7-8 (E.D. Va. Apr. 10, 2020) (post-COVID-19, denying a compassionate release motion filed by a 71-year-old who suffers from a variety of ailments including heart and respiratory diseases; though his conditions put him at risk of an adverse outcome from COVID-19, he failed to show a greater risk of contracting the disease in prison, in relation to his risk in the community, particularly since the BOP where he was housed had no reported cases of COVID-19). Because Butler's use of a corticosteroid nasal spray is not a "extraordinary and compelling" reason for compassionate release under § 3582(c)(1)(A)(i) and the accompanying policy statement, this Court must deny his motion for compassionate release.[5]

---

[5] Butler's motion also mentions a desire for BOP to transfer him to a halfway-house setting or move him to home confinement. The undersigned does not know BOP's assessment of Butler's candidacy for these options given his criminal and disciplinary history, including the commission of an internet-enabled offense while in BOP custody. Regardless, however, decisions regarding prisoner designations, such as release to home confinement or to a residential facility, are reserved exclusively to BOP, as they involve specialized determinations uniquely within its expertise. *See* 18 U.S.C. § 3621(b) (providing that "[t]he Bureau of Prisons shall designate the place of the prisoner's

7

## 2.  *In addition, the § 3553(a) and § 3142(g) considerations warrant denial of compassionate release.*

Aside from the above, this Court should deny the defendant's request for compassionate release because the various factors set forth in 18 U.S.C. § 3553(a) and § 3142(g) weigh against compassionate release, including the history and characteristics of the defendant, and the need to protect the public from further crimes. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring that this Court consider the 18 U.S.C. § 3553(a) factors "as applicable" when adjudicating a motion for compassionate release); *see also* U.S.S.G. § 1B1.13(2) (requiring the defendant show he is "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" before allowing grants of compassionate release).

As stated, Butler is currently serving a sentence based on conduct involving his acquisition and use, while in prison, of stolen debit card numbers via a contraband cell phone. This conduct occurred while Butler was already serving a 13-year sentence for a separate computer crime, which the PSR describes as a "large-scale scheme involving the hacking of computer networks to acquire and sell credit card account and other financial and personal information." Moreover, according to the PSR's timeline, Butler initiated the conduct leading to this prior conviction while on

---

imprisonment," taking into account his security designation, his programmatic needs, his mental and medical health needs, his faith-based needs, the proximity to his primary residence, BOP's security concerns, and the recommendations of the sentencing court). Accordingly, this Court lacks jurisdiction, as part of a compassionate release motion under § 3582(c)(1)(A), to consider these concerns, and must instead confine its analysis only to the relevant medical concerns under the binding U.S.S.G. policy statement, and the pertinent sentencing considerations under 18 U.S.C. § 3142 and § 3553(a). *See United States v. Read-Forbes*, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision.")

supervised release for yet another internet-enabled crime, this time involving Butler's unauthorized intrusion into a Department of Defense computer network. Finally, Butler's prison disciplinary record indicates he has again attempted some form of unauthorized internet usage while in BOP custody, with Butler receiving a recent disciplinary citation based on apparent attempts to skirt BOP's email monitoring protocols. *See* Sealed Exhibit 2. Based on the foregoing, § 3553(a) and § 3142(g) advocate against compassionate release. *Cf. Watson*, 2020 WL 1890541, at *3 (additionally finding the defendant was not eligible for compassionate release because of the seriousness of his offense, his lengthy criminal history as set forth in the PSR, and his various disciplinary infractions).

## CONCLUSION

For the foregoing reasons, the defendant's motion for compassionate release should be denied.

Respectfully submitted,

DAVID C. JOSEPH
United States Attorney

By: *s/ T. Forrest Phillips*
_____
T. FORREST PHILLIPS
(AL Bar #3736E29R)
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
(337) 262-6618

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 18-CR-00242-01 |
| | * | |
| | * | |
| VERSUS | * | JUDGE ZAINEY |
| | * | |
| | * | |
| MAX RAY BUTLER | * | MAGISTRATE JUDGE KAY |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the United States' Response in Opposition to Defendant's Motion for Compassionate Release, will be mailed to

    Max Ray Butler, BOP Inmate No. 09954-011
    Post Office Box 3850
    Adelanto, CA 92301

on this 28th day of July, 2020, at Lafayette, Louisiana.

                                        DAVID C. JOSEPH
                                        United States Attorney

                                        *s/ T. Forrest Phillips*
By:   _____
        T. FORREST PHILLIPS
        (AL Bar #3736E29R)
        Assistant United States Attorney
        800 Lafayette Street, Suite 2200
        Lafayette, LA 70501
        (337) 262-6618